UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANNY HARRISON, et al.,

      Plaintiffs,

v.

GENERAL MOTORS LLC,

      Defendant.

Case No. 21-12927
Honorable Laurie J. Michelson

---

## OPINION AND ORDER GRANTING IN PART
## GM'S MOTION TO COMPEL ARBITRATION [37]

---

Danny Harrison, along with 41 other plaintiffs, bought new or pre-owned General Motors vehicles that they believe are defective. Specifically, Plaintiffs allege that each of their vehicles (which encompass a variety of GM models and range from model years 2014 to 2021) has a valve-train system that malfunctions in a few ways.

The valve-train system controls when the intake valves and the exhaust valves open and close in a vehicle's engine. As their names suggest, the intake valves introduce either gasoline and air or just air to the combustion chamber and the exhaust valves allow exhaust to escape the chamber. Plaintiffs say that the rocker arms, which turn or pivot to open the valves, shed needle bearings, causing them to move out of rhythm with the rest of the valve train. And the valve springs, which close the valves, break down and fail prematurely, so they are unable to hold the combustion chamber closed. The defect also includes issues with the lifters, which apply pressure to the rocker arms, collapsing or becoming stuck.

As a result of this broadly defined defect, Plaintiffs say that they hear noises from the engine, such as a "chirping, squeaking, and/or ticking when the vehicle is not idling." Eventually, the defect leads to the engine misfiring as valves fail to open and close at the appropriate times. This, say Plaintiffs, causes them to stall, surge, or lose power while driving.

So Plaintiffs sued GM over what they call the Valve-Train Defect. They bring a host of claims, all on behalf of nationwide or statewide classes, which include fraudulent omission or concealment, unjust enrichment, breach of express warranty, breach of implied warranty, violation of the Magnuson-Moss Warranty Act, and violations of consumer-protection statutes in 22 states.

GM moved to compel 20 of the plaintiffs to arbitrate their claims. (GM also sought to dismiss many claims, which is the subject of a separate opinion.) Given the adequate briefing, the Court considers the motion to compel arbitration without further argument. *See* E.D. Mich. LR 7.1(f).

For the reasons given below, the Court will grant in part GM's motion to compel arbitration. The claims on behalf of the 17 plaintiffs who have a delegation clause in their arbitration agreement are stayed pending arbitration. As for the three remaining Plaintiffs, the Court finds that GM may not compel them to submit their claims to arbitration.

## I.

GM argues that about half of the named plaintiffs signed valid arbitration clauses, and thus, the Court may not adjudicate their claims.[1]

A motion to compel arbitration under § 4 of the Federal Arbitration Act is treated like a Rule 56 motion for summary judgment, and GM "had the initial duty to present evidence that would allow a trier of fact to find all required elements of a contract . . . because it bore the burden of proof on its contract claim under § 4." *See Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832, 839 (6th Cir. 2021).

One of the main issues raised by the parties here is whether GM can enforce the arbitration agreement even though it is not a signatory to the agreement. Related to that issue, there are two sub-issues the Court will address in turn. First, it will address issues related to the delegation clause, which delegates issues of arbitrability (including whether GM can enforce the arbitration provision) to the arbitrator. Second, for Plaintiffs without a delegation clause, it will address whether GM can enforce the arbitration provision against those Plaintiffs.

### A. Delegation Clause

Delegation clauses delegate questions of arbitrability to the arbitrator. In other words, these clauses state that an arbitrator (rather than a judge) must determine "gateway" questions, such as whether the parties have a valid arbitration agreement,

---

[1] The Court has provided a factual background for this case in its opinion on GM's motion to dismiss, which was issued simultaneously with this opinion. As the issue of arbitration requires little understanding of the underlying dispute, the Court does not include the factual summary here.

whether GM may enforce the arbitration agreement, and whether the agreement covers a particular issue. *See Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010).

The Supreme Court has recognized that a delegation clause "is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the [Federal Arbitration Act] operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center West, Inc.*, 561 U.S. at 68–69. "The additional agreement is valid under § 2 [of the FAA] save upon such grounds as exist at law or in equity for the revocation of any contract, and federal courts can enforce the agreement by staying federal litigation under § 3 [of the FAA] and compelling arbitration under § 4 [of the FAA]." *Id.* "[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019).

The Court may refer issues of arbitrability to an arbitrator "so long as the parties' agreement [delegates these issues] by clear and unmistakable evidence." *Id.* (citing *Rent-A-Center*, 561 U.S. at 69). The Sixth Circuit has held that incorporation of or reference to the American Arbitration Association (AAA) rules is "clear and unmistakable evidence" that there was an agreement to delegate issues of arbitrability, as those rules "clearly empower an arbitrator to decide questions of 'arbitrability.'" *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 845–46 (6th Cir. 2020). Here, 17 of the named plaintiffs entered into contracts that either

4

explicitly refer issues of arbitrability to an arbitrator or incorporate the AAA's rules into the agreement. (*See* ECF No. 37-2, PageID.3361 (arbitration agreement for Ibrahim and Lamberts stating, "Any dispute as to the validity, existence, scope, jurisdiction, or applicability of this arbitration agreement shall be arbitrated and decided by the arbitrator."); *id.* at PageID.3308 (arbitration agreement for Solis stating "Any claim or dispute . . . (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute) . . . shall, at your or our election, be resolved by neutral, binding arbitration[.]"); *id.* at 3323 (Velasquez); *id.* at 3326 (Zembol); *id.* at 3334 (Demarest); *id.* at PageID.3342 (Thorsons' agreement that "[a]ny dispute between Buyer and Dealer arising out of this transaction will be decided by arbitration . . . under . . . the applicable rules of the American Arbitration Association."); *id.* at PageID.3349 (Cecchini); *id.* at PageID.3372 (Hudson); *id.* at PageID.3376 (Fancher); *id.* at PageID.3381 (Prosser); ECF No. 37-3, PageID.3384 (Johnson); ECF No. 37-4, PageID.3391 (Brown); ECF No. 37-5, PageID.339 (Acree); ECF No. 37-6, PageID.3403 (Lacys).)[2] So these Plaintiffs agreed to delegate questions of arbitrability to the arbitrator.

GM says that an 18th plaintiff is part of this group, but the Court disagrees. GM argues that Dittman's agreement to submit to arbitration "all claims, demands, disputes or controversies of every kind or nature that may arise concerning . . .

---

[2] Demarest's and Acree's arbitration agreements (ECF No. 37-2, PageID.3334; ECF No. 37-5) are illegible or cut off. GM states that Demarest's arbitration clause incorporates the AAA rules, and that Acree's delegates questions of scope and enforceability to the arbitrator, and Plaintiffs do not argue otherwise. So the Court will accept that Demarest and Acree agreed to a delegation clause.

statements relating to the arbitration agreement" delegates questions of arbitrability to the arbitrator. (*See* ECF No. 37-2, PageID.3366.) This phrase is not "clear and unmistakable evidence that the parties agreed to have the arbitrator decide" issues of enforcement, validity, and scope. *See Blanton*, 962 F.3d at 844. Compared to the other delegation clauses found in Plaintiffs' sales and lease agreements, Dittman's arbitration provision does not mention scope, existence, or validity. The provision merely states that disputes over "statements relating to the arbitration agreement" are for the arbitrator. Arbitrability does not clearly and unmistakably fall into that category. It is much more likely that the phrase refers to statements the dealership employees made about the arbitration agreement, for example, and not whether GM could enforce the agreement. The clause simply does not show that Dittman agreed to arbitrate gateway issues.

As for the 17 named plaintiffs with delegation clauses, they do not contest that they agreed that an arbitrator would decide issues of arbitrability. Instead, they say those delegation clauses cannot be enforced against them in this litigation because they were only made in agreements with GM dealerships, and not with GM directly. Put differently, according to these plaintiffs, there is not clear and unmistakable evidence that they agreed *with GM* to delegate issues of arbitrability to the arbitrator. (ECF No. 41, PageID.5309.)

Plaintiffs are correct that the arbitration agreements in question were made with GM dealerships. GM does not contest that. But that fact only gets them so far,

as precedent from the Sixth Circuit instructs the Court to also delegate the issue of whether non-parties can enforce this agreement against Plaintiffs.

In *Swiger v. Rosette*, the Sixth Circuit acknowledged that the issue of whether a non-signatory (like GM) can enforce a delegation clause against signatories (like Plaintiffs) presents a "logical conundrum" because generally, it is the courts responsibility to "determine whether a contract exists at all, and if the nonsignatories are not parties to the contract, then the Plaintiff has no agreement with them." 989 F.3d 501, 506–07 (6th Cir. 2021) (quoting *De Angelis v. Icon Ent. Grp. Inc.*, 364 F. Supp. 3d 787, 796 (S.D. Ohio 2019)). The Sixth Circuit concluded, however, that whether a non-party could enforce the arbitration agreement, including the delegation clause, "concerned a question of arbitrability . . . that [Plaintiff's] arbitration agreement delegated to an arbitrator." *Id.* (citing *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 848–49 (6th Cir. 2020)); *see also Blanton*, 962 F.3d at 852 ("Keep in mind that the question here is quite narrow. It's not about the *merits* of the case. It's not even about *whether* the parties have to arbitrate the merits. Instead, it's about *who should decide* whether the parties have to arbitrate the merits."); *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 356 (6th Cir. 2022) (leaving the question of whether Delek could enforce the arbitration agreement for the arbitrator). So the fact that these named plaintiffs did not contract with GM does not bar the Court from delegating questions of arbitrability, including that very issue, to the arbitrator.

7

Resisting this conclusion, Plaintiffs argue that because they are specifically challenging the delegation clause, as opposed to the whole arbitration agreement, the Court is required to determine whether GM can enforce that provision against them. To this end, Plaintiffs challenge the delegation clause on three grounds: (1) "[they] and GM did not manifest an intent to agree, and did not agree to them," (2) "that GM is incapable of meeting its heightened burden, specific to the delegation clauses, of proving the parties' intent by clear and unmistakable evidence," and (3) "the [delegation clauses] are completely subsumed within the arbitration provisions that are buried at the end of dense vehicle contracts." (ECF No. 41, PageID.5317.)

True, the Supreme Court has stated that "[i]f a party challenges the validity under § 2 [of the FAA] of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under § 4." *Rent-A-Center*, 561 U.S. at 71. This test, however, "is hard to meet" and, as the Sixth Circuit explained in *Becker*, "is not met here." *See* 39 F.4th 351, 356 (6th Cir. 2022).

Start with Plaintiffs' first two challenges to the delegation clause. The primary reason GM is unable to show "clear and unmistakable evidence" of an intent to delegate issues of arbitrability, according to Plaintiffs, is because they did not sign an arbitration agreement with GM. The *Becker* Court rejected this argument, finding that it is not a "specific" challenge to the delegation clause. To meet the "specific challenge" test in the Sixth Circuit, Plaintiffs "must show that the basis of their challenge is directed specifically to the delegation provision." *Becker*, 39 F.4th at 356.

8

Such a showing is not made when a party "simply recycles the same arguments that pertain to the enforceability of the agreement as a whole" or invokes the same factual or legal grounds as the ones supporting its challenge to the agreement as a whole. *Id.* Applying this standard, the *Becker* Court went on to find that the plaintiff's challenge to the delegation clause relied on a "single circumstance, that [Defendant] is a non-signatory to the employment agreement[.]" *Id.* In other words, the plaintiff's challenge to "the enforceability of both the arbitration agreement and the delegation provision" were "identical in substance." *Id.* Thus, the Sixth Circuit held that an arbitrator must decide whether the defendant could enforce the arbitration agreement. *Id.*

That is true here, too. Though styled as a "specific" challenge, Plaintiffs use the same factual and legal bases to challenge GM's ability to enforce both the arbitration agreement in general and the delegation clause specifically. (ECF No. 41, PageID.5320–5324 (emphasizing the agreements' use of "you or our" or "the parties" to argue that the agreements create "rights and duties between the Subject Plaintiffs and the dealerships only.").) So, as the Sixth Circuit did in *Becker*, the Court finds that this challenge is not "specific" to the delegation clause such that the Court, and not the arbitrator, should decide whether GM can enforce the agreement against Plaintiffs.

Plaintiffs' third challenge to their delegation clauses—that the delegation clause is completely "subsumed" within the arbitration provisions—does not fare much better. Though Plaintiffs provide little explanation of this argument, the Court

surmises that Plaintiffs are arguing that there is only clear and unmistakable evidence of an agreement to delegate issues to an arbitrator if the delegation clause is independent of other provisions of the agreement.

This argument gets Plaintiffs nowhere. Though the challenge is perhaps specific to the delegation clause, it does not challenge the "validity" of the delegation clause. *See Cunningham v. Ford Motor Co.*, No. 21-CV-10781, 2022 WL 2819115, at *6 (E.D. Mich. July 19, 2022); *see also Rent-A-Center*, 561 U.S. at 71 ("If a party challenges the *validity* under § 2 [of the FAA] of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under § 4."). Courts recognize a validity challenge as one that asserts a "generally applicable contract defense" such as "fraud, duress, or unconscionability" to show that the delegation clause is unenforceable. *See Cunningham*, 2022 WL 2819115, at *6 (citing *Rent-A-Center*, 561 U.S. at 68). Plaintiffs have not pointed to any "generally applicable contract defense" that a provision subsumed within another provision is not enforceable.

And even if the Court were to consider the merits of such an argument, GM would still have shown by "clear and unmistakable evidence" that Plaintiffs had agreed to a delegation clause. As the *Cunningham* court found, the Sixth Circuit's decision in *Swiger* involved a delegation clause that was not a standalone provision. *Cunningham*, 2022 WL 2819115, at *4 (citing *Swiger*, 989 F.3d at 506). Yet, in *Swiger*, the Sixth Circuit enforced the delegation clause against the plaintiffs and required an arbitrator to decide if the defendant could enforce the arbitration agreement

against them. *See id.* The Court agrees with the reasoning in *Cunningham* that "*Swiger* makes clear that under these circumstances − *i.e.*, where a plaintiff has signed a contract with an arbitration provision and a delegation clause and where a non-party to the contract seeks to compel the plaintiff to arbitrate claims that bear some relation to the contract − the question is *not* whether the plaintiff specifically intended that the non-party could enforce the delegation clause." *Id.* "Rather," the court continued, "the sole question is whether the delegation clause clearly and unmistakably delegates questions of arbitrability to the arbitrator." *Id.* GM has met this burden despite the delegation clauses being subsumed within the arbitration provision.

In support of their argument that the delegation clause must stand alone, Plaintiffs disregard this Sixth Circuit authority and instead rely on *Straub v. Ford Motor Company*, No. CV 21-10634, 2021 WL 5085830, at *6 (E.D. Mich. Nov. 2, 2021). True, the court in *Straub* concluded that without a standalone delegation clause, there was not clear and unmistakable evidence that the plaintiffs intended to delegate these issues to an arbitrator. *Id.* But the court cited no precedent in support of its reasoning. *Id.* Further, the court relied on the now-overturned district court opinion in *Becker*. *Id.* Having the benefit of the Sixth Circuit's opinion in *Becker*, this Court declines to follow *Straub*'s reasoning on both the issue of who should decide enforceability and whether the embedded nature of the clauses is dispositive of Plaintiffs' intent to delegate these issues.

11

So the Court is not persuaded that Plaintiffs' argument about the embeddedness of the delegation clause is a "validity challenge" such that the Court needs to decide it, but even if it was, the Court would not find it compelling on the merits either.

*    *    *

In sum, the Court finds that GM has shown by clear and unmistakable evidence that the following named plaintiffs agreed to delegate issues of arbitrability, including whether GM can enforce the agreement, to an arbitrator: Adam Ibrahim, Tyler Lamberts, Adria Lacy, Chad Lacy, Daniel Demarest, Dave Cecchini, Forrest Hudson, Jeremiah Johnson, Joey Brown, Nancy Velasquez, Randall Thorson, Salome Rodriguez-Thorson, Rebecca Prosser, Richard Zembol, Ruben Solis, Ryan Fancher, and Trenton Acree.

Thus, pursuant to its authority under the FAA, 9 U.S.C. § 3, the Court stays proceedings as to these plaintiffs. *See De Angelis v. Icon Ent. Grp. Inc.*, 364 F. Supp. 3d 787, 796–97 (S.D. Ohio 2019) ("This Court has stayed proceedings in a similar situation in which it found the claims subject to arbitration but was without jurisdiction to compel arbitration in the forum for which the parties contracted."); *Cunningham*, 2022 WL 2819115, at *7. If an arbitrator ultimately determines that GM may not compel arbitration, these plaintiffs may file a motion to lift the stay and proceed with the merits of their claims here.

## B. Enforceability of Arbitration Clause

That leaves three plaintiffs—Podojil, Dittman, and Luster—who have entered into arbitration agreements that do not have delegation clauses. That means this Court, as opposed to the arbitrator, must determine whether GM can compel arbitration of their claims.

Under the Federal Arbitration Act, the Court looks to "traditional principles of state law" to determine whether a nonsignatory to an arbitration agreement may enforce that agreement. *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1643 (2020). The Supreme Court has noted that it has "recognized that arbitration agreements may be enforced by nonsignatories through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Id.* at 1643–44. And the Court has permitted "a litigant who was not a party to the relevant arbitration agreement" to "invoke § 3 [of the FAA] if the relevant state contract law allows him to enforce the agreement." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009).

So the Court will address whether GM can enforce the arbitration agreements against Podojil, Dittman, and Luster according to applicable state law for each plaintiff.

### 1. Podojil

Podojil bought his vehicle in Ohio. GM asserts that Ohio law thus applies to his arbitration agreement, and Plaintiffs do not argue otherwise. So the Court will

use Ohio law to resolve the arbitration issue as to Podojil without resolving any choice-of-law questions, to the extent there are any. *See AtriCure, Inc. v. Meng*, 12 F.4th 516, 525 (6th Cir. 2021) ("AtriCure, by comparison, argues that Ohio law applies, and Meng and Med-Zenith do not dispute this choice in their reply brief. We thus will apply Ohio law without resolving any choice-of-law questions.").

GM first asserts that Podojil is equitably estopped from contesting arbitration.

Ohio courts have applied estoppel in cases where a plaintiff, who is a signatory to an arbitration agreement, seeks to enforce other portions of the agreement against a non-signatory defendant. *See AtriCure*, 12 F.4th at 527 (applying Ohio law and finding "[e]quitable estoppel, in short, prevents a party from picking and choosing the contract terms that it alleges govern its relationship with the other litigant"). To "trigger the doctrine," however, Podojil's claims need to "arise from the contract containing the arbitration clause[.]" *AtriCure, Inc.*, 12 F.4th at 527 (quoting *Taylor v. Ernst & Young, LLP*, 958 N.E.2d 1203, 1213 (Ohio 2011)).

That is not the case here. As Podojil points out, he does not seek to hold GM accountable for any alleged duties under his sales agreement with the dealership, which is what contains the arbitration provision. GM's argument that "had they not entered into the agreements to purchase or lease their vehicles, the Arbitration Plaintiffs would have no claims against GM at all" (ECF No. 37, PageID.3291), does not meet the standard set out under Ohio law. Ohio law is clear that estoppel applies "when the signatory to the written agreement must rely on the terms of the written agreement in asserting its claims against the nonsignatory." *I Sports v. IMG*

14

*Worldwide, Inc.*, 813 N.E.2d 4, 9 (Ohio Ct. App. 2004). No such reliance occurred here, so GM may not enforce the arbitration provision against Podojil under a theory of equitable estoppel.

GM also cites an "alternate estoppel theory" under Ohio law where arbitration may be compelled by a nonsignatory against a signatory "due to the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract . . . and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations." (ECF No. 37, PageID.3289 (quoting *Short v. Res. Title Agency, Inc.*, No. 95839, 2011 WL 1203906, at *3 (Ohio Ct. App. 2011)).) As explained, Podojil has not alleged GM had any "obligations and duties" under the sale or lease agreement. So this argument is inapt. Further, when looking at *Short* more closely, the court specified that "[u]nder this theory, because the individual defendants' allegedly wrongful acts related to their actions as agents of the company that was a party to the arbitration agreement, the nonsignatory agents should also have the benefit of the arbitration agreement made by their principal." *Short v. Res. Title Agency, Inc.*, No. 2011-Ohio-1577, 2011 WL 1203906, at *3 (Ohio Ct. App. Mar. 31, 2011). GM does not argue, nor could it, that it acted as the dealership's agent, so it appears that the "alternate estoppel" theory would not apply for this reason as well.

GM also asserts that it may enforce the arbitration agreement against Podojil because Podojil alleges GM and the dealerships engaged in "concerted action." GM does not cite Ohio case law in support of this argument, and as discussed below, other

15

states have required more robust allegations of concerted action before allowing a non-party to enforce an arbitration agreement on this basis.

The Court therefore finds that GM cannot enforce the arbitration agreement against Podojil under Ohio law.

### 2. Dittman

The parties apparently agree that Tennessee law would apply to Dittman's arbitration agreement. (*See* ECF No. 37, PageID.3276–3277, n.6; ECF No. 41 (no mention of choice-of-law).)

As with Podojil, GM asserts that Dittman is estopped from contesting arbitration. Like Ohio courts, Tennessee courts have similarly recognized that a nonsignatory can enforce an arbitration provision against a signatory using estoppel. And, like Ohio, Tennessee uses a "benefits" and "burdens" standard for estoppel. *See Blue Water Bay at Ctr. Hill, LLC v. Hasty*, No. M201602382COAR3CV, 2017 WL 5665410, at *11 (Tenn. Ct. App. Nov. 27, 2017) ("In our view, if a party is seeking to enforce a contract against another party, it is proper that equity binds them to accept the contract's benefits as well as its burdens.").

As discussed above, this standard presents a problem for GM, as Plaintiffs are not seeking to enforce any duties under the sale or lease agreements against GM. In other words, they are not seeking to invoke the "benefits" of the contract while avoiding the "burden" of arbitration. And according to GM's own understanding of Tennessee law, "estoppel should not apply when a signatory's claim merely references or factually presumes the existence of the contract containing the arbitration

provision, because like some courts have stated, we are of the opinion that a 'but-for' factual relationship is not sufficient to warrant the application of an estoppel argument." *Blue Water Bay*, 2017 WL 5665410, at *13. So it seems Tennessee courts have squarely rejected the exact argument GM relies on—that but-for Plaintiffs' execution of the purchase or lease agreements, they would have no claims against GM.

GM also cursorily states that the broad language of the agreements "confirms that arbitration is appropriate here." (ECF No. 37, PageID.3293.) The Court disagrees that Dittman's agreement reflects such an intent. *See Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc.*, 566 S.W.3d 671, 688 (Tenn. 2019) ("The common thread in all Tennessee contract cases—the cardinal rule upon which all other rules hinge—is that courts must interpret contracts so as to ascertain and give effect to the intent of the contracting parties consistent with legal principles."). Dittman's agreement specifies that "[i]n the event either *party* asserts any claim in litigation which is covered by this Agreement, the other *party* shall have the right to seek arbitration in accordance with this Agreement." (ECF No. 37-2, PageID.3366 (emphasis added).) GM is not a "party" to the Agreement. So the Court is not persuaded that the language of the agreement evidences an intent to allow GM to compel arbitration. *Cf. Green v. Mission Health Comms., LLC*, 2020 WL 6702866, at *5 (M.D. Tenn. Nov. 13, 2020) (finding that Defendant was a party to the agreements because the agreements included

Defendant as a co-employer and Plaintiff agreed to abide by the agreement "regarding employment with" Defendant).

Finally, GM discusses a "concerted action" exception, but it has provided no case law suggesting that Tennessee recognizes such an exception, and the Court has been unable to identify such an exception on its own. The closest Tennessee case the Court identified was *Mid-South Maintenance Inc. v. Paychex Inc.*, but there, the court applied New York law, both the signatory and nonsignatory to the agreement were defendants, and the complaint treated the signatory and nonsignatory as a "single unit" without specifying which damages were attributable independently to each defendant. No. W2014-02329-COA-R3-CV, 2015 WL 4880855, at *22 (Tenn. Ct. App. Aug. 14, 2015). So that case is distinguishable from the facts here where GM is seeking to enforce the agreement under Tennessee law and where Plaintiffs have made no claims against the dealerships, let alone identified damages attributable to the dealerships.

The Court thus denies GM's motion to compel arbitration as to Dittman.

### 3. Luster

The Court uses Florida law to analyze whether GM can enforce Luster's arbitration agreement. (*See* ECF No. 37, PageID.3287.)

Once again, GM asserts an estoppel argument that Luster's claims are "interrelated" with the underlying sale or lease agreement because without the agreement, Luster would have no claims against GM. According to the very case GM cited, however, Florida law does not allow a "simple but-for relationship" to amount

to "actual dependence on the underlying contract that equitable estoppel requires." *Allscripts Healthcare Sols, Inc. v. Pain Clinic of Northwest Florida, Inc.*, 158 So.3d 644, 646 (Fla. App. Ct. Aug. 13, 2014). "A plaintiff's dependence on the contract in this sense means more than that plaintiff would not own the product except for the contract[.]" *Id.* And where the "causes of action in the Complaint are not attempts to enforce contractual rights" under the relevant agreement, estoppel does not allow GM to compel Luster to arbitrate. *See id.* at 647.

GM also argues that Plaintiffs' allegations of "concerted action" between the dealerships and GM allow it to compel arbitration. Under Florida law, however, claims must be asserted against both the signatory and nonsignatory to establish that the claims are "intertwined" with the relevant agreements. *Kratos Invs. LLC v. ABS Healthcare Servs., LLC*, 319 So. 3d 97, 101 (Fla. Dist. Ct. App. 2021) ("ICD specifically alleges the appellants conspired with its agents . . . causing the agents to breach the Agent Agreements. The claims against the appellants and the agents are based on the same set of operative facts and unquestionably premised upon substantially interdependent and concerted misconduct between the non-signatories and signatories to the Agent Agreements."). This standard is simply not met here. There are no claims asserted against the dealerships, and Plaintiffs do not allege a conspiracy between the dealerships and GM. Plaintiffs do allege that GM instructed its dealerships to repair the defect in an ineffective way and to tell customers particular things when they complained about the defect, but that does not amount to concerted action. The complaint focuses on GM's actions in directing the

19

dealership's activities more than any concerted actions taken by both GM and its dealerships. And, unlike *Kratos*, Plaintiffs are not saying any actions by GM led to a breach of the sales or lease agreements by the dealerships. So GM has not persuaded the Court that every reasonable trier of fact would find that it could enforce the arbitration agreement against Luster based on allegations of concerted action.

The last leg of GM's argument is based on the broad language of Luster's arbitration agreement. GM cites Florida law that states "[i]t is well established that the courts broadly construe arbitration provisions containing the language 'arising out of or relating to,' such that in certain instances the clause will include non-signatories." *Cunningham Hamilton Quiter, P.A. v. B.L. of Miami, Inc.*, 776 So.2d 940, 942 (Fla. Ct. App. Nov. 15, 2000).

This is not such an instance, though. In *Cunningham*, the relevant arbitration provision "provide[d] for inclusion of necessary parties," which the court found expressed plaintiff's intent to arbitrate disputes with more than just signatories. *Id.* Luster's agreement, on the other hand, states "I understand and agree that . . . any claim or dispute which arises out of or relates to . . . purchase or condition of the vehicle . . . will, *at your or my election*, be submitted to binding arbitration." (ECF No. 37-2, PageID.3311 (emphasis added).) And the agreement defines "you" and "your" as the "dealer" and "my" as "the buyer(s)." *Id.* The Court does not see how this language indicates an intent to arbitrate claims made against nonparties to the agreement. No law GM provided indicates otherwise. So the Court declines to allow GM to enforce the arbitration agreement based on the broad language of the arbitration provision.

In all, GM has not shown that that it is entitled to compel Luster to arbitrate her claims. So its motion to compel arbitration as to Luster is denied.

## II.

For the foregoing reasons, GM's motion to compel arbitration is GRANTED IN PART and DENIED IN PART. Ibrahim, Lamberts, Adria Lacy, Chad Lacy, Demarest,[3] Cecchini, Hudson, Johnson, Brown, Velasquez, Thorson, Rodriguez-Thorson, Prosser, Zembol, Solis, Fancher, and Acree must submit their claims to arbitration. Thus, their claims against GM are STAYED.

GM is not entitled to compel Podojil, Dittman, and Luster—who have arbitration agreements with GM dealerships that do not contain delegation clauses—to arbitrate their claims. Thus, their claims will move forward in this litigation.

SO ORDERED.

Dated: January 19, 2023

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

---

[3] Demarest's Magnusson-Moss claim is not subject to arbitration pursuant to the plain language of his agreement, and GM does not seek to compel him to arbitrate that claim.