UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANNY HARRISON et al.,

    Plaintiffs,

v.

GENERAL MOTORS, LLC,

    Defendant.

Case No. 21-12927
Honorable Laurie J. Michelson

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S AMENDED MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT [52] AND DISMISSING AS MOOT DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT [50]**

Danny Harrison, and approximately 50 other plaintiffs, believe the valve-train systems in their General Motors vehicles are defective. Plaintiffs say that they hear noises from the engine, such as "chirping, squeaking, and/or ticking when the vehicle is not idling," and have issues with their engine stalling, surging, or losing power while driving. (ECF No. 27, PageID.2662.) So Plaintiffs, on behalf of statewide classes, sued GM for fraudulent omission or concealment, unjust enrichment, breach of express and implied warranties, violations of the Magnuson-Moss Warranty Act, and violations of consumer-protection statutes in 22 states. Following the Court's ruling on GM's motion to dismiss, Plaintiffs amended their complaint, adding ten new plaintiffs from seven states. Now before the Court is GM's second motion to dismiss some of these new plaintiffs' claims. (ECF No. 52.) For the reasons explained below, the Court GRANTS that motion in part.

I.

GM has already filed one motion to dismiss, claiming Plaintiffs failed to state a claim on which relief could be granted. (ECF No. 38.) At the same time, GM filed a motion to compel arbitration for certain plaintiffs who signed valid arbitration agreements, asking the Court to stay these plaintiffs' claims and mandate arbitration. (ECF No. 37.) The Court granted both motions in part and sent 17 plaintiffs to arbitration. (ECF Nos. 44, 45.)

Plaintiffs then filed a second amended complaint, adding additional vehicle owners from California (Harry and LeeAnn Raftopoulous), Louisiana (Matthew and Sherry Richer), Maine (Shane Chamberlain), New York (Francis Iaccino), Ohio (Christopher Swartz), Pennsylvania (John and Brenda Mark), and Virginia (Anne Marie Hudick). (ECF No. 48.) GM again moved to dismiss for failure to state a claim (ECF No. 50) and, after the Court cautioned that it would not reconsider arguments from the first motion to dismiss (ECF No. 51), amended its motion to clarify which arguments were new and which were included only to preserve arguments on appeal (ECF No. 52).

As the Court previously indicated (*see* ECF No. 51), it will only consider new arguments in this opinion. The parties agree that the claims of Chamberlain, the Marks, and the Raftopoulouses are subject to the stay pending arbitration. (ECF No. 52, PageID.6549–6550; ECF No. 53, PageID.6769.) And Plaintiffs do not oppose dismissing Swartz's and Hudick's claims for breach of express and implied warranties and violations of the Magnuson-Moss Warranty Act, Swartz's class-based and

individual Ohio Consumer Sales Practices Act claims, or any of the new plaintiffs' nationwide class claims or claims for unjust enrichment and misrepresentation. (ECF No. 53, PageID.6784–6787.) These claims are therefore DISMISSED. Thus, the Court will address only the remaining four claims of Plaintiffs Iaccino, the Richers, and Hudick.

## II.

In deciding a motion to dismiss under Rule 12(b)(6), the Court "construes the complaint in the light most favorable" to Plaintiffs and determines whether their "complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *See Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Detailed factual allegations are not required to survive a motion to dismiss, *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012), but they must "raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). What is plausible is "a context-specific task" requiring this Court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III.

### A. New York Implied Warranty Claim (Iaccino)

GM asserts that Iaccino's implied warranty claim is subject to dismissal because he failed to allege privity. (ECF No. 52, PageID.6552–6553.) Under New York law, privity is a requirement for implied warranty claims where the alleged injury is purely economic. *See Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 556 (S.D.N.Y. 2016) ("Although New York has long since dispensed with the privity

3

requirement for express warranty claims, New York courts continue to require privity between a plaintiff and defendant with respect to claims for breach of the implied warranties of merchantability and fitness for a particular purpose where the only loss alleged is economic." (citations omitted)); s*ee also Arthur Jaffee Assocs. v. Bilsco Auto Serv., Inc.*, 448 N.E.2d 792, 792 (N.Y. 1983); *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 249 (2d Cir. 1986) ("To have a cause of action for breach of an implied warranty of fitness, therefore, privity must necessarily exist because the creation of the warranty requires a direct exchange between buyer and seller."). Here, since Iaccino's claims are purely economic (*see* ECF No. 48, PageID.5642), he must allege privity with GM to proceed on his implied warranty claim.

Iaccino says he adequately alleged privity based on an agency relationship between GM and its authorized dealers. (ECF No. 53, PageID.6772–6773.) And indeed, at least one New York court has recognized that privity can exist between a consumer and manufacturer based on an agency relationship. *See Gordon v. Ford Motor Co.*, 657 N.Y.S.2d 43, 43 (N.Y. App. Div. 1997) (affirming denial of summary judgment on an implied warranty claim because "privity would exist if the dealerships with which plaintiffs dealt were defendant's sales or leasing agents" and further factual development was necessary to establish the nature of those relationships).

GM argues that *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288 (N.D.N.Y. 2019), forecloses this argument. But GM is mistaken. In *Cummings*, the court dismissed an implied warranty claim by a plaintiff who did not "ple[a]d any facts

4

plausibly suggesting that the third-party dealer was in fact Defendant's agent." *Id.* at 310. Contrary to what GM implies, *Cummings* did not determine that authorized dealers categorically cannot be agents. Instead, the court merely found that the plaintiff's allegation that the seller was an authorized dealer, without more, did not plausibly allege an agency relationship.

Here, in contrast, Iaccino alleges that GM acted through authorized GM dealerships by "direct[ing] consumers to take their vehicles to authorized dealerships for repairs or services" and "control[ling] the way in which its authorized dealers can respond to complaints" and conduct repairs, among other allegations. (ECF No. 48, PageID.5743–5744.) At this stage, this is sufficient to plausibly allege that the authorized dealership where Iaccino purchased his vehicle was an agent of GM, especially since privity is a fact-intensive inquiry. *See Santiago v. DaimlerChrysler Corp.*, 738 N.Y.S.2d 571, 571 (N.Y. App. Div. 2002) ("[O]nly on the facts can it be determined whether there is privity between plaintiff and defendant."); *DiCintio v. DaimlerChrysler Corp.*, 724 N.Y.S.2d 717, 718 (N.Y. App. Div. 2001), *reversed on other grounds by* 97 N.Y.2d 463 (N.Y. 2002) ("[P]rivity would exist if the dealerships with which plaintiff dealt were DaimlerChrysler's sales or leasing agents, and disclosure is needed with respect to that possibility. In the absence of any discovery, it was premature for the motion court to find . . . that, as a matter of law, there was no privity between plaintiff and DaimlerChrysler."). Accordingly, Iaccino has plausibly alleged he was in privity with GM, and his implied warranty claim against GM survives dismissal.

5

Alternatively, Iaccino argues he is not required to allege privity because he is an intended third-party beneficiary of the implied warranties that GM made to its dealerships. (ECF No. 53, PageID.6773–6775.) "New York . . . recognizes . . . a third-party exception [to privity], which requires 'a fact-intensive exercise not amenable to resolution at the pleading stage.'" *Gant v. Ford Motor Co.*, 517 F. Supp. 3d 707, 717 (E.D. Mich. 2021) (quoting *Francis v. General Motors, LLC*, 504 F.Supp.3d 659, 676–77 (E.D. Mich. 2020)); *see also Francis,* 504 F. Supp. 3d at 677 ("New York recognizes a third-party beneficiary exception to the privity requirement, which is particularly apposite in the context of cases involving a manufacturer with an extensive established network of authorized dealers that sell its cars. Resolving the applicability of that exception also is a fact-intensive exercise not amenable to resolution at the pleading stage.").

Iaccino plausibly alleged that he falls under this exception. (*See* ECF No. 48, PageID.5758.) As this Court has concluded on analogous facts before, Iaccino "alleged that the contract was intended to benefit [him] as [an] end consumer[] of the vehicles," so his "New York law implied warranty claim[] will not be dismissed for failure to allege privity." *See In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 980 fn. 26 (E.D. Mich. 2022).

For all these reasons, Iaccino's implied warranty claim under New York law may proceed.

## B. Louisiana Product Liability Act (Richers)

### 1. Fraudulent Concealment Claim

Next, GM argues that the Richers' fraudulent concealment claim is preempted because the Louisiana Product Liability Act and redhibition statutes are "the exclusive theories of recovery for defective products." (ECF No. 52, PageID.6553 (quoting *Pitre v. Yamaha Motor Co.*, 51 F. Supp. 3d 644, 661 (E.D. La. 2014)).)

The Richers contend that, because their injury is based in contract law, not in a defect of the product, their claims fall under an exception to the LPLA's exclusivity provision. But that exception is inapplicable here, so GM is correct: the Richers' claims are preempted by the LPLA.

The language is clear: the LPLA provides the sole theories of liability on which a plaintiff may recover from a manufacturer for damage caused by a product. La. Stat. Ann. § 9:2800.52 ("This Chapter establishes the exclusive theories of liability for manufacturers for damage caused by their products. A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in this Chapter."); *see also In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, 406 F. Supp. 3d 618, 646 (E.D. Mich. 2019) ("The Court agrees that Ainsworth's LUPTA claim fails because the LPLA provides the exclusive theory of liability for the wrongs Ainsworth alleges."). The Richers are attempting to recover "from a manufacturer" within the meaning of the statute—since GM manufactured their vehicle—so the question becomes whether they are recovering for "damage caused by a product."

The LPLA defines "damage" as "all damage caused by a product" that is recoverable under "Civil Code Articles 2315, 2351.1 and 2315.2." LA. Stat. Ann. § 9:2800.53(5). This includes "damage to the product itself and economic loss arising from a deficiency in loss or use of the product only to the extent" such damage is not covered under Louisiana's Redhibition statutes. *Id.* Such statutes provide a cause of action for breach of "warranty against redhibitory defects," which the Code defines as defects that "render[] the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect." La. Civ. Code art. 2520 (West 2001).

Louisiana courts distinguish damages in tort, which fall within the exclusivity provisions of the LPLA, from damages in contract, which do not. *See C-Innovation, LLC v. Norddeutsche Seekabelewerke GMBH*, No. 10-4441, 2013 WL 990026, at *5 (E.D. La. Mar. 13, 2013) (collecting cases); *In re Ford Motor Co. Vehicle Paint Litig.*, 1996 WL 426548, at *16 n.3 (E.D. La. July 30, 1996) ("Their fraud claims are essentially predicated on a contract-type fraud theory, i.e., that plaintiffs were fraudulently induced to purchase Ford vehicles based on misstatements and omissions by Ford that the vehicles were free of defects. The preemptive force of the LPLA extends to claims based on tort duties; thus, the Act does not bar redhibition actions, which are based on warranty theories." (citation omitted)).

But this carve-out for contract claims is narrow. As the Louisiana courts have explained:

> While the exclusivity provision of the LPLA leaves no doubt breach of contract claims against manufacturers for damages caused by their

8

> products are subsumed by the LPLA, in cases where a specific part of the injury is caused *only* by the breach of contract, and not by the product itself, a buyer might be able to bring both types of claims against a manufacturer. The Court holds that *in the limited circumstances where a buyer sues a manufacturer for economic damages not covered in redhibition and not caused by the product itself, it may bring a breach of contract claim for those damages, on its own or in addition to a claim for other damages under the LPLA or redhibition.*

*C-Innovation*, 2013 WL 990026, at *6 (quoting *Hollybrook Cottonseed Processing, LLC v. Carver, Inc.*, No. 09–750, 2010 WL 892869, at *7 (W.D. La. Mar. 11, 2010)). In *C-Innovation*, the Louisiana Court denied the plaintiff's breach-of-contract-based fraud claims against the defendant manufacturer for allegedly defective cables that were not purchased directly from the manufacturer. Because there was no dispute that the plaintiff and manufacturer did not have a contract "for the purchase of these cables," the court concluded that the plaintiff's fraud claim as to those items "cannot be based in contract or article 1953 [a Louisiana fraud statute], but instead must be rooted either in tort, and thus brought under the LPLA," or rooted in redhibition and brought under those statutes. *Id.* In other words, where plaintiffs do not allege a contract with the manufacturer, they cannot get around LPLA's exclusivity provisions.

That is the situation here. The Richers do not allege they had a contract with GM for the purchase of their vehicles. They instead claim they bought their vehicle from "an authorized GM dealership." (ECF No. 48, PageID.5630.) So their fraud claim "cannot be based in contract," *C-Innovation*, 2013 WL 990026 at *6, and is therefore preempted by the LPLA and accordingly dismissed.

9

### 2. Failure to State a Claim

Next GM argues that the Richers cannot assert a claim under the LPLA because they seek redress only for economic harms, they do not state a plausible claim under any of the LPLA's four theories of liability, and their claim is time-barred under the LPLA's one-year prescriptive period. (ECF No. 52, PageID.6554–6555.) The Richers counter that they can assert economic harms—to the extent the damages are not covered by their redhibition claim—under the LPLA, that they have plausibly alleged two of the LPLA's theories of liability, and that their claim is not time-barred because they discovered the defect less than one year before filing suit. (ECF No. 53, PageID.6779–6782.)

First, the Richers are correct that, in general, plaintiffs can bring claims under both the LPLA and redhibition. *See Aucoin v. S. Quality Homes, LLC,* 984 So. 2d 685, 691 n.8 (La. 2008). Indeed, "[t]he LPLA was never intended to eliminate redhibition as a means of recovery against a manufacturer" because the two provide different methods of recovery for different types of damages caused by a defective product. *Safeco Ins. Co. of Am. v. Chrysler Corp.*, 834 So. 2d 1026, 1045–46 (La. Ct, App. 2002). But the portion of damages that fall under redhibition are not compensable under the LPLA. *See* La. Stat. Ann. § 9:2800.53(5) ("'Damage' includes damage to the product itself and economic loss arising from a deficiency in or loss of use of the product only to the extent that . . . [Louisiana's redhibition statutes] do[] not allow recovery for such damage or economic loss."); *see also DeAtley v. Victoria's Secret Catalogue, LLC*, 876 So. 2d 112, 116 (La. Ct. App. 2004) (differentiating "pure economic loss," covered

under redhibition, from "damages recovered pursuant to the LPLA"). The Richers, like any other plaintiff, can recover under the LPLA for damages not covered in redhibition. But unlike the plaintiffs in cases they cite, the Richers have not plausibly alleged that they incurred any damages that are not covered under redhibition.

Louisiana's redhibition laws provide that sellers must reimburse buyers for any damage to the purchased product that arises from a defect in the product. La. Civ. Code Ann. art. 2520. Again, "A defect is redhibitory when it renders the thing [sold] useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect." *Id*. The redhibition statutes give the buyer "the right to obtain recission of the sale," a refund with interest, a repair of the defect, and—if the seller acted in bad faith—other damages and attorney's fees. *See* La. Civ. Code Ann. arts. 2520, 2531, 2545. The LPLA, in contrast, provides a remedy, against only the manufacturer, for "all damage caused by a product, including survival and wrongful death damages," but excluding economic loss covered under the redhibition statutes, and does not allow the recovery of attorney's fees. La. Stat. Ann. § 9:2800.53. To make out a claim under the LPLA, a plaintiff must show that a product is "unreasonably dangerous" because of a defect in construction or design, a lack of an adequate warning, or failure to conform with an express warranty. La. Stat. Ann. §§ 9:2800.54–.58; *see also Pitre v. Yamaha Motor Co. Ltd*, 51 F.Supp.3d 644 (E.D. La. 2014).

For cases dealing with only economic loss, *Pitre* is instructive. There, the Louisiana district court explained:

11

> Plaintiffs do not address whether they have stated claims that exceed the scope of a redhibition theory. In their complaint, Plaintiffs allege that: (1) they had to "pay premium prices," to buy a "a product that they would not have purchased" if they had known of the defect; (2) the defect "reduced the value" of the motors; and (3) the defect "[c]aused reasonable consumers . . . to spend money[.]" These claimed damages are economic in nature, and thus fall squarely within the scope of La. Civ. Code 2520 and 2545 [Louisiana's redhibition statutes]. Apart from making the bare assertion that the F-Series motors were "unreasonably dangerous" in several ways, Plaintiffs allege no facts suggesting that the F-Series motors or the coating defect caused any noneconomic damages. Therefore, Plaintiffs have stated a claim in redhibition, but not under any of the four "unreasonably dangerous" theories set forth in the LPLA.

*Id.* at 660–61 (omission and alteration in original).

The same can be said here. The Richers claim they "have driven their vehicle in a foreseeable manner . . . [and have not] used it for purposes unintended by GM . . . . [but] despite this normal and foreseeable driving, the Valve Train Defect has rendered their vehicle unsafe and unfit to be used as intended." (ECF No. 48, PageID.5634.) This begins to make out an LPLA claim more than a "bare assertion that the [vehicles] were 'unreasonably dangerous,'" *see Pitre*, 51 F.Supp.3d at 661, but the Richers do not allege that this dangerousness has caused them any physical harm. They are only seeking compensation for "harm [caused] by the loss of their vehicles, the threat of sudden engine stalls or hesitations, and/or higher than expected maintenance costs." (ECF No. 48, PageID.6051.) Based on their factual allegations, the Richers have only plausibly alleged harm stemming from the cost of attempted repairs, the continued defect with their vehicle after these unsuccessful repairs, and "lost confidence" in the safety of their vehicle. (*Id.* at PageID.5633.) Because their claims are economic in nature and pertain only to damages to the

12

product itself—including this amorphous "lost confidence" in the vehicle—they have not plausibly alleged claims that "exceed the scope of a redhibition theory." *See Pitre,* 51 F.Supp.3d at 661. Thus, the Richers' LPLA claims must be dismissed.

### C. Virginia Consumer Protection Act (Hudick)

The Virginia Consumer Protection Act provides a private cause of action for "(1) fraud, (2) by a supplier, (3) in a consumer transaction." *Nahigian v. Juno Loudoun, LLC*, 684 F. Supp. 2d 731, 741 (E.D. Va. 2010); *see* Va. Code. § 59.1-200(A) (declaring unlawful "fraudulent acts or practices committed by a supplier in connection with a consumer transaction"). The parties only dispute the first requirement, fraud.

Both parties agree that omissions-based claims of fraud, such as Hudick's claim that GM failed to inform her of the valve-train defect, are only actionable under the VCPA if the supplier had a duty to disclose. (*See* ECF No. 52, PageID.6557; ECF No. 53, PageID.6782); *see also Bank of Montreal v. Signet Bank*, 193 F.3d 818, 829 (4th Cir. 1999) (explaining that fraudulent omission is not actionable under Virginia law unless the defendant had a duty to disclose). The Court has already held that Plaintiffs have adequately pled GM's superior knowledge of the defect. (ECF No. 44, PageID.5385.) The parties simply disagree on whether this superior knowledge is sufficient under Virginia law to give rise to a duty to disclose. GM says a duty to disclose only arises from superior knowledge when parties have a contractual relationship, (ECF No. 52, PageID.6557), while Hudick says an agency relationship is enough, (ECF No. 53, PageID.6782). At the motion to dismiss stage, Hudick's

13

allegations that the authorized dealership where she purchased her vehicle was GM's agent are sufficient to support the reasonable inference that GM had a duty to disclose.

GM claims liability can only arise from "a '*contracting party's* willful nondisclosure.'" (ECF No. 52, PageID.6557 (citing *Spence v. Griffin*, 372 S.E.2d 595, 599 (Va. 1988)). But "[i]n Virginia, a claim of fraud does not require direct contact or privity between the defendant and the plaintiff. A complaint must merely allege that the defendant knew or had reason to know that the plaintiff would rely on the misrepresentation." *Alexander v. Se. Wholesale Corp.,* 978 F. Supp. 2d 615, 623 (E.D. Va. 2013) (citation omitted). A defendant can have knowledge of a plaintiff's likely reliance even when a consumer buys a product from its agent. So a defendant can have a duty to disclose even when it is not a party to the sale contract. Even the case GM relies on, *Spence*, involved an agent's misrepresentations to a contracting party, not merely the contracting parties.

While this case is different, since it involves a principal's omissions inducing a contract with an alleged agent, a similar concept applies. Take, for example, the Northern District of Georgia's analysis of the duty to disclose under various state laws in *Callen v. Daimler AG*, No. 19-1411, 2020 WL 10090879 (N.D. Ga. June 17, 2020). While the district court dismissed the fraudulent concealment claims of plaintiffs who bought their vehicles from private sellers and dealerships unaffiliated with the defendant—including the Virginia plaintiffs—the court denied the motion to dismiss as to the plaintiffs who "purchased their vehicles from

14

*authorized . . . dealerships . . .* [and who] further allege that these dealerships acted as *agents* of the Defendants at all relevant times." *Callen*, 2020 WL 10090879, at *18 (emphasis added). Likewise, the Southern District of New York held that a VCPA fraudulent concealment claim survived a motion to dismiss, rejecting New GM's argument that "Virginia law would not impose a duty to disclose on a remote manufacturer such as New GM," because, "[f]ollowing discovery in this case, [Plaintiff] may well be able to show a sufficient relationship between her and New GM—for example, through marketing materials or the warranty that accompanied her vehicle." *In re General Motors LLC Ignition Switch Litigation*, No. 14-2543, 2016 WL 3920353, at *39 (S.D.N.Y. July 15, 2016).

Like in *Callen*, where the plaintiffs alleged that Daimler "direct[ed] Mercedes dealerships to act on the Defendants' behalf for vehicle repairs and warranty issues," 2020 WL 10090879, at *18, the plaintiffs here allege that GM directed its authorized dealers to conduct repairs and address warranty issues, and exerted significant control over how the dealerships did so (ECF No. 48, PageID.5741–5745). So at this stage, Hudick has "plausibly alleged that the Defendants' authorized dealerships act as their agents during sales transactions, such that their failure to provide pertinent information could expose the Defendants to liability for fraudulent concealment." *Callen*, 2020 WL 10090879, at *18.

### IV.

For the above reasons, the Court GRANTS IN PART GM's motion to dismiss (ECF No. 52) and dismisses the Richers' claims for fraudulent concealment and

violations of the LPLA. The Court DENIES GM's motion to dismiss as to Iaccino's and Hudick's claims, and allows those claims to proceed.

Furthermore, the Court DISMISSES AS MOOT GM's first Motion to Dismiss the Second Amended Complaint (ECF No. 50).

SO ORDERED.

Dated: January 17, 2024

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE
